UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH DAMIAN SUSALLA,

                Petitioner,

v.                                  CASE NO. 2:12-cv-13818
                                  HON. ARTHUR J. TARNOW

MARY BERGHUIS,

                Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE HABEAS CORPUS PETITION,**
**DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT**
**GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter has come before the Court on petitioner Joseph Damian

Susalla's pro se amended petition for the writ of habeas corpus under 28 U.S.C. §

2254. The petition challenges Petitioner's Oakland County conviction for first-

degree (premeditated) murder, Mich. Comp. Laws § 750.316(1)(a). Petitioner

alleges as grounds for relief that: (1) prejudicial hearsay was admitted at his trial;

(2) evidence of his past violent acts deprived him of a fair trial; (3) the trial court

did not have jurisdiction over him; (4) the trial court's jury instructions were

inadequate; (5) the trial court deprived him of a competency hearing; (6) the trial

judge was biased and failed to control the proceedings; (7) the prosecutor failed to

protect his rights; (8) he was constructively denied trial counsel; and (9) appellate

counsel was ineffective. Respondent Mary Berghuis urges the Court through

counsel to deny the petition on grounds that Petitioner procedurally defaulted some

of his claims and the state-court decisions were not contrary to Supreme Court

precedent, unreasonable applications of Supreme Court precedent, or

unreasonable applications of the facts.  The Court has determined from the

pleadings and state-court record that Petitioner's claims do not warrant habeas

relief.  Accordingly, the habeas petition will be denied.

## I. Background

Petitioner was charged with the murder of Kelley Duberg ("Duberg") and

tried before a jury in Oakland County Circuit Court.  The Michigan Court of

Appeals accurately summarized the evidence at trial as follows:

> Defendant did not dispute that he killed Duberg, his girlfriend, but
> claimed that he killed her while in a fit of rage, and not with
> premeditation and deliberation.
>
> On the morning of May 23, 2009, which was the Saturday before
> Memorial Day, defendant asked his stepfather and mother, Roger and
> Karen Wickstrom, if it was okay if he camped on their property in
> Crawford County.  He planned to take Duberg with him.  Defendant
> also borrowed a shovel and an ax from the Wickstroms.  The
> Wickstroms next saw defendant the following evening, May 24, 2009,
> when he returned the shovel and ax.  Defendant told the Wickstroms
> that he and Duberg had not camped because Duberg was drunk.
> Based on defendant's history of violence with women, Karen
> Wickstrom became concerned about Duberg's safety.  She told
> defendant that she wanted to see or talk with Duberg, to which
> defendant gave varying responses, such as Duberg was drunk,
> sleeping, or not answering her telephone, and had left with another

man. Karen tried calling Duberg on her cellular telephone over the next two days, but Duberg never answered her telephone. Finally, on Wednesday, May 27, 2009, Karen called the Michigan State Police to report Duberg missing.

Sergeant Melinda Logan, who took the missing person report, went to Duberg's apartment to conduct a welfare check. Logan did not find Duberg. Logan also sent a police officer to Duberg's place of employment; her coworkers reported that Duberg had not appeared for work that week.

That same day, Logan received information that defendant was at Doug Fletcher's house on Bentler Street in Detroit. Defendant was taken into custody. After waiving his *Miranda*[1] rights, defendant told two Michigan State Police officers that he had last seen Duberg on Saturday and that he believed she was with someone named Ian. Duberg's car, which defendant was known to drive, was found at a convenience store approximately nine blocks from Fletcher's house. The car had been backed into the parking spot, such that the car's license plate was not visible.

According to Fletcher, he saw Duberg's car on his property on May 25, 2009. He sent Bruce Cousins across the street to Karen McCartney's house to ask defendant to move the car. Defendant asked to speak to Cousins alone. He told Cousins that he had killed someone and buried the body. He explained that he had hit the person and the person had urinated and defecated. Defendant further told Cousins that his girlfriend was passed out at home. Sean Voegler was also at McCartney's house. Defendant told Voegler that he had murdered and buried his girlfriend. He explained that he was jealous over his girlfriend. Defendant stated that his girlfriend deserved everything that she had received and that he also wanted to take care of the other man.

---

[1] *Miranda v. Arizona*, 384 U.S. 436; 86 S. Ct. 1602; 16 L.Ed.2d 694 (1966).

On June 5, 2009, the Michigan State Police received consent from the Wickstroms to search their property in Crawford County.  With the aid of a cadaver dog, the officers found the buried remains of Duberg.  Duberg's body was wrapped in a shower curtain, tied with extension cords and twine, and several garbage bags.  According to the medical examiner, Duberg suffered blunt force trauma to her face, which caused swelling and bruising around her eyes, but the cause of death was ligature strangulation.  The medical examiner testified that it generally takes ten to 15 seconds for a person being choked to lose consciousness, but that it takes a few minutes of strangulation for irreversible brain damage and death to occur.  After defendant was arrested for the killing of Duberg, he made a telephone call to his mother from jail in which he stated, "I'm going to try to get it down."

Defendant testified that he and Duberg argued during the evening of May 22, 2009.  Duberg told defendant that she hated him, and when he asked her what her problem was, she did not respond; she just glared at him. Defendant attempted to give her a hug, but she kicked him in the groin. According to defendant, he then went into a rage and lost [] control of himself; he stated that he just "blacked out."  He put his hands around Duberg's neck and strangled her.  When Duberg urinated on him, defendant hit her three times in the face.  And then, after Duberg just laid there for about two hours, defendant realized that she was dead.  He wrapped her up and buried her the next day.  Defendant denied that he ever planned to kill Duberg.
On cross-examination, defendant admitted that he put a piece of twine around Duberg's neck.  After he punched Duberg, he walked to the kitchen and took the twine from a drawer.  Defendant first claimed that the twine broke as soon as he placed it around Duberg's neck and pulled, but then he admitted that he pulled the twine hard enough to break through the cartilage in Duberg's neck and applied pressure long enough for Duberg to lose consciousness and die.

Defendant admitted that he was jealous and controlling with regard to women and, especially, to the women that he dated.  Barbara Polson and Kenneth McCray, who lived in the apartment above Duberg's apartment, testified that they often heard defendant and Duberg argue.

They also heard sounds related to shoving and pushing. Two weeks before Memorial Day, Polson saw defendant "pulling" Duberg by the arm. Jeffrey Saucerman, who knew defendant from AA, testified that it seemed defendant was jealous in his relationship with Duberg. Defendant told Saucerman that he checked Duberg's panties for semen. Telephone records established that on May 12, 2009, defendant called Duberg's cellular telephone 74 times and that on May 13, 2009, he called 78 times. Two of Duberg's coworkers testified that, based on conversations with Duberg about defendant, they were concerned for Duberg's safety. Gregory Barber, Duberg's boss, testified that he received a note from Duberg on April 22, 2009, stating that she had broken up with her boyfriend and that she needed to take the day off because she needed to change the lock on her door and because she needed to go to Verizon to get a battery for her cellular telephone to replace the one that defendant had taken. According to Janet Sylvester, who attended AA with Duberg, Duberg told her two weeks before she went missing that she was afraid that defendant was going to kill her.

Deborah Aquilina, defendant's sister, testified that she called 911 on a day in March 2005 because defendant had "kicked [her] ass." She had a bloody nose and a black eye. Robin Susalla, defendant's wife, testified that defendant punched her in the face on four or five occasions. Fletcher testified that he had seen defendant beat a former girlfriend in the head with a tire iron.

*People v. Susalla*, No. 299402, 2011 WL 5008586, at *1–3 (Mich. Ct. App. Oct.

20, 2011) (footnote in original).

There was additional evidence that Petitioner's palm print was found on one

of the plastic bags in which Duberg was buried. On June 14, 2010, the jury found

Petitioner guilty, as charged, of first-degree (premeditated) murder, and on July 6, 2010, the trial court sentenced Petitioner to mandatory life imprisonment.

Petitioner raised his first two habeas claims (the evidentiary issues) in an appeal as of right, claiming that the trial court erred reversibly by admitting in evidence (1) Duberg's out-of-court comment and (2) testimony concerning Petitioner's prior acts of domestic violence. The Michigan Court of Appeals determined that Petitioner had not established "plain error" in the admission of Duberg's out-of-court statement and that the trial court did not abuse its discretion in admitting Petitioner's prior acts of domestic violence. Accordingly, the Court of Appeals affirmed Petitioner's conviction. *See id.* Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on April 23, 2012. *See People v. Susalla*, 491 Mich. 909; 810 N.W.2d 912 (2012) (table).

On August 29, 2012, Petitioner commenced this action by filing a *pro se* habeas petition and a motion to stay the federal proceedings. The habeas petition raised the two claims that Petitioner had presented to the state courts on direct appeal. In his motion for a stay, Petitioner explained that wanted to pursue state remedies for several claims that his appellate counsel had failed to raise on direct appeal. The Court granted Petitioner's request for a stay and administratively

closed this case on September 29, 2012. *See* Order Granting Petitioner's Mot. for a Stay, ECF No. 4.

Petitioner subsequently raised several claims in a motion for relief from the state court's judgment. The trial court found no merit in Petitioner's jurisdictional claims and determined that Petitioner was not entitled to relief on his other claims pursuant to Michigan Court Rule 6.508(D). *See People v. Susalla*, No. 09-228601-FC, Op. and Order (Oakland Cty. Cir. Ct. July 11, 2013). The Michigan Court of Appeals denied Petitioner's subsequent application for leave to appeal on the basis that Petitioner failed to establish entitlement to relief under Rule 6.508(D). *See People v. Susalla*, No. 317721 (Mich. Ct. App. Mar. 14, 2014). On September 29, 2014, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Susalla*, 497 Mich. 868; 853 N.W.2d 367 (2014).

On October 17, 2014, Petitioner filed an amended habeas corpus petition and a motion to lift the stay in this case. *See* ECF Nos. 5 and 6. The amended petition contains the two claims that Petitioner presented to the state court on direct appeal and the seven claims that Petitioner raised in his motion for relief from judgment. The Court granted Petitioner's motion to lift the stay and then re-opened this case. *See* Order Lifting the Stay and Reinstating Case, ECF No. 7. Respondent Mary

Berghuis subsequently filed an answer to the petition, *see* ECF No. 9, and

Petitioner filed a reply, *see* ECF No. 16.

Although Respondent asserts that some of Petitioner's claims are

procedurally defaulted, "a procedural default, that is, a critical failure to comply

with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S.

87, 89 (1997).  The Court, moreover, has determined that Petitioner's claims lack

merit and that a procedural-default analysis would "add[] nothing but complexity

to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).  The Court

therefore proceeds to address the merits of Petitioner's claims, using the following

standard of review.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal
>        law, as determined by the Supreme Court of the United
>        States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence
        presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of

state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when

"a state-court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 410-11.

### III.  Analysis

### A.  Hearsay

Petitioner alleges that the trial court erred reversibly by admitting Janet

Sylvester's testimony that, about two weeks before Duberg was discovered

Susalla v. Berghuis, No. 12-13818

missing, Duberg told her that she was afraid Petitioner was going to kill her.  (Trial

Tr. Vol. IV, at 55-56, June 10, 2010.)  Petitioner claims that this was prejudicial

hearsay, which deprived him of a defense and his right to due process because he

could not cross-examine Duberg.  The Michigan Court of Appeals reviewed this

claim for "plain error" because Petitioner did not preserve the claim for appellate

review by objecting to the out-of-court statement in the trial court.  The Court of

Appeals then concluded that Petitioner failed to establish plain error because

Duberg's statement was relevant to the question of whether she had provoked

Petitioner, as he claimed.  The Court of Appeals also stated that

> [e]ven if the admission of Duberg's out-of-court statement constituted
> plain error, defendant fails to carry the burden that the error
> prejudiced him, i.e., that the error affected the outcome of the
> proceedings.  Given all the evidence concerning the relationship of
> defendant and Duberg, which indicated defendant's jealousy and
> discord between the two, and the evidence that Duberg died from
> ligature strangulation, we cannot conclude that the error, if there was
> error, affected the outcome of defendant's trial.

Susalla, 2011 WL 5008586, at *3 n.2 (internal citations omitted).

This Court finds no merit in Petitioner's hearsay claim because it is based on

the Michigan Rules of Evidence.  "To the extent that any testimony and comments

violated Michigan's rules of evidence, such errors are not cognizable on federal

habeas review."  Hall v. Vasbinder, 563 F.3d 222, 239 (6th Cir. 2009).  "In

10

conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Petitioner's claim lacks merit even if it were construed as one brought under the Confrontation Clause of the United States Constitution, which guarantees the defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, [her] prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine [her]." *Giles v. California*, 554 U.S. 353, 358 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). In other words, "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68.

The term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* Consistent with *Giles* and *Crawford*, as well as, *Davis v.*

11

*Washington*, 547 U.S. 813, 822 (2006), " 'statements to friends and neighbors about abuse and intimidation' allegedly inflicted by [the petitioner] are nontestimonial statements and are not subject to the Confrontation Clause." *Doan v. Carter*, 548 F.3d 449, 458 (6th Cir. 2008).

Duberg made the contested statement about Petitioner to a friend. Thus, to the extent Petitioner raises his claim under the Confrontation Clause, his claim lacks merit, because Duberg's statement is not subject to the Confrontation Clause.

## B. Prior Violent Acts

Petitioner alleges next that the trial court erred reversibly and deprived him of a fair trial by admitting evidence of his prior acts of domestic violence and by refusing to instruct the jury on how to use the evidence. The evidence consisted of testimony that Petitioner: beat his sister, giving her a bloody nose and a black eye in 2005 (Trial Tr. Vol. III, at 85-92, June 9, 2010); punched his estranged wife in the face four or five times (*id*. at 95-99); and struck a former girlfriend on the head with a tire iron (Trial Tr. Vol. IV, at 16-18, June 10, 2010). Petitioner asserts that this propensity evidence may have tainted the jurors' perception of him and persuaded them that he was a bad man who deserved punishment.

The trial court determined that evidence of Petitioner's other acts of domestic violence was admissible under Mich. Comp. Laws § 768.27b(1).  Section 768.27b(1) provides that, except when an act occurred more than ten years before the charged offense,

> in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

The trial court noted that both the charged offense and the "prior acts" evidence sought to be admitted involved domestic violence.  The court concluded that the "prior acts" evidence was admissible under the Michigan Rules of Evidence, because the evidence was offered to establish Petitioner's intent, common plan, or scheme and the absence of mistake or accident.  The trial court stated that the evidence was relevant to those issues and that the probative value of the evidence was not outweighed by the danger of unfair prejudice.  *See People v. Susalla*, No. 09-228601-FC, Op. and Order (Oakland Cty. Cir. Ct. May 17, 2010).

The Michigan Court of Appeals agreed that the "prior acts" evidence was admissible under § 768.27b and that Michigan Rule of Evidence 403, which allows relevant evidence to be excluded if its probative value is substantially outweighed

13

by unfair prejudice, did not preclude admission of the evidence. The Court of Appeals stated that, while the evidence was prejudicial, it did not prevent the jury from weighing all the evidence to determine whether Petitioner premeditated and deliberated the murder. The Court of Appeals concluded that the trial court did not abuse its discretion in admitting evidence of Petitioner's prior acts of domestic violence and in denying Petitioner's request for a limiting jury instruction.

Errors in the application of state law, especially rulings in the admission or exclusion of evidence, usually are not questioned in a federal habeas corpus proceeding. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). A state trial court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

Evidence of Petitioner's prior acts of domestic violence was damaging evidence, but it was not fundamentally unfair for a couple of reasons. First, § 768.27b permits the admission of evidence regarding other acts of domestic

14

violence for any relevant purpose, including "to show a defendant's character or propensity to commit the same act." *People v. Railer*, 288 Mich. App. 213, 219–20, 792 N.W.2d 776, 780 (2010) (citing *People v. Schultz*, 278 Mich. App. 776, 778, 754 N.W.2d 925 (2008)). Second, testimony about Petitioner's prior acts was not any more graphic or violent than testimony about the injuries which Petitioner inflicted on Duberg.

Furthermore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA," *id*. at 513, and habeas relief is not warranted on Petitioner's evidentiary claim.

## C. The Trial Court's Jurisdiction

Petitioner alleges that the state trial court lacked jurisdiction over him due to three errors: (1) the felony complaint and felony warrant were authorized by an assistant prosecutor instead of the county prosecutor, as required by state law; (2) the felony complaint lacked sufficient information about the crime to establish probable cause to issue a felony warrant; and (3) the trial court arraigned him

15

before the prosecutor filed the criminal information.[2]  Petitioner argues that, as a result of these jurisdictional defects, all subsequent proceedings in his case were invalid and he is entitled to immediate release from custody.

The trial court addressed these issues during the post-conviction proceedings and concluded that:  (1) assistant prosecutors have authority under state law to perform the duties of the prosecuting attorney, when necessary; (2) allegations in the complaint that Petitioner killed the victim with premeditation and deliberation were sufficient for a finding of reasonable cause to issue an arrest warrant; and (3) although the prosecutor violated Michigan Court Rule 6.112(C) by failing to file the information in a timely manner, Petitioner did not make a timely objection to the error and did not shown any prejudice from the error.

This Court finds no merit in Petitioner's jurisdictional claims because they allege violations of state law.  "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a determination of whether the state trial court was "vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."  *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).

---

[2]  In Michigan, "[a] prosecution must be based on an information or an indictment," Mich. Ct. Rule 6.112(B), and "[t]he prosecutor must file the information or indictment on or before the date set for the arraignment."  Mich. Ct. Rule 6.112(C).

## D.  The Jury Instructions

Petitioner alleges that the trial court failed to give proper and complete jury instructions before the taking of evidence, during trial, and after the close of proofs.  Specifically, Petitioner contends that the trial court failed to read the statute for the charged crime, failed to instruct the jury on the law and on the elements of the crime before any evidence was taken, and failed to re-read the information at the close of the proofs.  Petitioner contends that these omissions allowed the jury to speculate on whether the prosecution had met its burden of proof.

The trial court determined on post-conviction review that Petitioner had failed to demonstrate good cause for not raising his claim on appeal and actual prejudice from the alleged errors.  The trial court concluded that Petitioner did not meet his burden of proving entitlement to relief from judgment.

### 1.  Clearly Established Federal Law

The only question on habeas review of jury instructions is whether the ailing instructions infected the entire trial with such unfairness as to deprive the petitioner of due process.  *McGuire*, 502 U.S. at 72, 75.  In other words, "[t]o warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a

whole, so infirm that they rendered the entire trial fundamentally unfair.' " *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

## 2. Application

Petitioner has not cited any Supreme Court decision that requires a trial court to read the controlling statute to the jury or to instruct the jury on the elements of the crime before any evidence is admitted. And Petitioner's allegations that the trial court violated state law lack merit because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Furthermore, the trial court did inform the jury of the charge during *voir dire*. The trial court also asked the prosecutor to read the information, which stated that Petitioner was charged with deliberately murdering Duberg with premeditation on or about May 22, 2009 through May 24, 2009. (Trial Tr. Vol. I, at 26, 30-31, 185, 189-90, June 7, 2010.) At the close of the proofs, the trial court informed the jury once again that Petitioner was charged with first-degree premeditated murder.

The trial court then read the elements of the crime and explained the concepts of premeditation and deliberation. The court also read the elements of the lesser-included offense of second-degree murder and explained that the prosecutor carried the burden of proving all the elements of the crime beyond a reasonable doubt. (Trial Tr. Vol. VI, at 41, 50-52, June 14, 2010.) The jury was permitted to take a written copy of the trial court's instructions into the jury room with them for their use during deliberations. (*Id*. at 55.)

Petitioner had no objections to the instructions as read to the jury, and the jurors had no questions for the trial court during their deliberations. In fact, they reached their verdict in fifty-three minutes. (*Id*. at 57.)

Petitioner has failed to establish that the trial court's jury instructions were so infirm as to render his trial fundamentally unfair. The Court therefore declines to grant the writ on the basis of Petitioner's challenge to the jury instructions.

## E.  The Lack of a Competency Hearing

The fifth habeas claim alleges that the trial court violated state law and deprived Petitioner of a fair trial and due process by failing to conduct a hearing to determine whether Petitioner was competent to stand trial. Petitioner asserts that this was a jurisdictional defect, which resulted in a structural error, because his

mental illness rendered him unable to assist his attorney in his defense. The trial court considered this claim during the post-conviction proceedings and rejected it, because Petitioner failed to show good cause for not raising the issue on appeal and actual prejudice from the alleged error.

Michigan law requires state courts to hold a competency hearing after receiving a competency report. *See* Mich. Comp. Laws § 330.2030(1). But the contention that the trial court violated this statute is not a basis for habeas relief, because "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. at 780, and "a 'mere error of state law' is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982)). Although the Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process,' " *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996), "a competency determination is necessary only when a court has reason to doubt the defendant's competence." *Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993). Stated differently, a trial court's failure to inquire into a defendant's competence violates the constitutional right to a fair trial only when the evidence raises a bona

fide doubt about the defendant's competence to stand trial. *Pate v. Robinson*, 383

U.S. 375, 385 (1966).

The record before the Court indicates that Petitioner was evaluated for

criminal responsibility at the Center For Forensic Psychiatry in Ann Arbor,

Michigan. The psychologist's conclusion after interviewing Petitioner and

reviewing relevant records was that Petitioner did not suffer from mental illness or

mental retardation at the time of the crime and that his actions evidenced

forethought, planning, and knowledgeable execution. *See* Center for Forensic

Psychiatry Report, at 9-11, ECF No. 14-1, Pg ID 1098-1100 (sealed). On the

basis of the psychiatric report, the prosecutor and defense counsel stipulated at the

preliminary examination that Petitioner was competent to stand trial. (Prelim.

Examination Tr., Vol. II, at 72-73, Sept. 16, 2009), ECF No. 11-3, Pg ID 285-86.

At a motion hearing about a month later, defense counsel requested, and was

granted, permission to hire a psychiatrist to conduct an independent examination.

Defense counsel pointed out that Petitioner had a history of psychiatric treatment

and medication, that some witnesses at the preliminary examination had said

Petitioner may have been crazy, and that Petitioner was being housed in a section

of the jail reserved for people who had emotional problems, needed a safe place, or

had threatened suicide.  (Mot. Hr'g at 5-6, Oct. 14, 2009), ECF No. 11-5, Pg ID 371-72.

An independent psychiatrist subsequently evaluated Petitioner and concluded in a thirteen-page report dated October 31, 2009, that Petitioner was competent to stand trial and was not insane at the time of the crime.  The psychiatrist described Petitioner as

> alert, fully oriented and not demonstrating any degree of impairment in his memory or judgment which would interfere with his ability to participate in a trial.  He has had considerable experience with the justice system and understands the role of the judge, attorneys, and other officers of the court.  He understands that if found guilty he will face remand.  He did not present evidence of acute disturbance of thinking, mood or other mental illness which would interfere at this time with his ability to understand the workings of a court.  He is not mentally retarded.  He is capable of reviewing documents presented to him.  He can assist his attorney, and [is] competent to stand trial.

Independent Psychiatric Examination, ECF No. 14-2, at 13, Pg ID 1113 (sealed).

The transcript of trial, moreover, supports the finding that Petitioner was competent to stand trial.  He testified coherently at trial and demonstrated an ability to understand the attorneys' questions[3] and to respond appropriately.

Because the record fails to establish a bona fide doubt as to Petitioner's

---

[3]  The direct, cross, re-direct, and re-cross examinations cover approximately twenty-seven pages of transcript.

competence, the lack of a formal competency hearing did not deprive Petitioner of his constitutional right to a fair trial.

## F.  The Trial Judge

Petitioner asserts that the trial judge acquiesced control of the proceedings to the prosecutor and was biased against him.  In support of this claim, Petitioner alleges that the trial court arraigned him without first having acquired jurisdiction over him, failed to read complete jury instructions, did not conduct a competency hearing or remand the case to the state district court for a hearing, and stated at sentencing that Petitioner was not fit to live in society.

The trial court pointed out on post-conviction review that Petitioner was not prejudiced by the premature arraignment or by the court's failure to hold a competency hearing and that Petitioner had not pointed to an error in the jury instructions.  Therefore, according to the court, Petitioner failed to show that the court did not control the proceedings.

### 1.  Clearly Established Federal Law

Trial judges are not mere moderators of court proceedings; they must govern "the trial for the purpose of assuring its proper conduct and of determining questions of law."  *Quercia v. United States*, 289 U.S. 466, 469 (1933).  "If truth

and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Geders v. United States*, 425 U.S. 80, 87 (1976). The Due Process Clause, moreover, "requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).

## 2. Application

The record does not support Petitioner's claim that the trial court failed to control the proceedings or that the court acquiesced control to the prosecutor. The trial court performed the usual duties of a trial court by conducting *voir dire*, giving preliminary jury instructions, ruling on evidentiary issues and objections, exerting control over the conduct of the proceedings, reading the charge to the jury, and accepting the jury's verdict.

Although the trial court arraigned Petitioner before the prosecutor filed the information, the premature arraignment apparently was an oversight, not acquiescence of control to the prosecutor. Furthermore, the error was harmless, because Petitioner acknowledged receipt of the information, waived a formal

reading of it, and stood moot to the charge. (Arraignment Tr., at 3, Sept. 29, 2009), ECF No. 11-4, Pg ID 364.

The failure to hold a competency hearing also did not amount to acquiescing control of the proceedings or prejudicial error, because the parties stipulated that Petitioner was competent, and Petitioner's own expert subsequently concluded that Petitioner was competent to stand trial. As for the jury instructions, they accurately informed the jurors of the charge and the elements of the crime. Defense counsel's lack of any objection to the instructions as read to the jury is an indication that the trial court did not acquiesce control of the jury instructions to the prosecutor.

Petitioner also has failed to show that the trial court was biased against him. To prevail on his judicial bias claim, Petitioner must show "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).

At Petitioner's sentencing, the trial court stated that the mandatory life sentence was appropriate because Petitioner was not fit to live in society.

Susalla v. Berghuis, No. 12-13818

(Sentencing Tr. at 6, July 6, 2010.)  The trial court's opinion in all likelihood was formed on the basis of the facts established at trial.

Judicial opinions that are based on facts gleaned from the proceedings before the court are not a basis for a claim of bias unless the opinions "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). The trial court did not display any deep-seated antagonism toward Petitioner during the trial, and the life sentence that the court imposed was mandatory under state law. *See* Mich. Comp. Laws § 750.316(1) (providing that a person who commits first-degree murder "shall be punished by imprisonment for life without eligibility for parole"). Thus, Petitioner has failed to show that the trial court was biased. He also has failed to show that the trial court acquiesced control of the proceedings to the prosecutor.

## G.  The Prosecutor

Petitioner argues next that the prosecutor failed to protect his rights and denied him his right to a fair trial. Specifically, Petitioner claims that the prosecutor failed to object to the jurisdictional defects in the case, remained silent when the trial court omitted jury instructions on the elements of the crime,

stipulated to the findings in the forensic report, and sat idly by when the trial court acquiesced control of the proceedings.

### 1. Clearly Established Federal Law

The Supreme Court has stated that "[t]he responsibility of the  prosecutor as a representative of the public . . . requires him [or her] to be sensitive to the due process rights of a defendant to a fair trial." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 384 n.12 (1979).  Nevertheless,

> [w]hile prosecutors play multiple roles in our court system, none implicates a duty to protect a prisoner in the courtroom setting. Prosecutors present the State's case as advocates and also function as investigators or administrators.  *See Imbler v. Pachtman*, 424 U.S. 409, 427–431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (recognizing these varying roles in according absolute immunity for § 1983 damage claims).  But no court has held that prosecutors have any duty to protect prisoners as part of their duties, either expressly or by implication.

*Syzak v. Dammon*, No. 14-10245, 2014 WL 2864458, at *2 (E.D. Mich. June 24, 2014) (unpublished).

Furthermore, "[c]laims of prosecutorial misconduct are reviewed deferentially" in a habeas case.  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  The relevant question is whether the prosecutor's conduct infected the trial with such unfairness

as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). "In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)).

### B. Application

Petitioner blames the prosecutor for failing to object to jurisdictional defects in his case, but the trial court determined on post-conviction review that two of the claimed errors were not jurisdictional defects. The trial court noted that, contrary to Petitioner's allegations, the assistant prosecutor was authorized to initiate the felony complaint and warrant and that the complaint contained sufficient allegations to support a finding of reasonable cause to issue an arrest warrant. The state court's interpretation of state law binds this Court, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and because there were no jurisdictional defects, the prosecutor did not commit misconduct by failing to object to the pretrial proceedings.

The trial court agreed that the prosecutor violated Michigan Court Rule 6.112(C) by failing to file a timely information. However, as pointed out above in

section III.F.2. of this opinion, Petitioner did not object at the time. In fact, he acknowledged receipt of the information, waived a formal reading of it, and stood moot to the charge. Under the circumstances, the prosecutor's error was harmless.

Petitioner alleges that the prosecutor should not have remained silent when the trial court omitted jury instructions on the elements of the crime. But there was no basis for objecting, as the trial court instructed the jury on the elements of the crime, as well as, the elements of the lesser-included crime of second-degree murder.

Next, Petitioner blames the prosecutor for stipulating to the findings in the forensic report. The forensic examiner determined that Petitioner did not suffer from mental illness or mental retardation at the time of the crime and that his actions evidenced forethought, planning, and knowledgeable execution. Petitioner's own expert subsequently opined that Petitioner was competent to stand trial. In light of these expert opinions, the prosecutor did not commit misconduct by stipulating to Petitioner's competence to stand trial.

Petitioner's final allegation about the prosecutor is that the prosecutor did not object when the trial court acquiesced control of the proceedings. However, as previously explained, the trial court did not acquiesce control of the proceedings to

the prosecutor.  There was no basis for objecting to the trial court's handling of the case.

In conclusion, Petitioner has failed to show that the prosecutor's conduct infected the trial with such unfairness as to make the resulting conviction a denial of due process.  The Court therefore declines to grant relief on Petitioner's prosecutorial-misconduct claim.

## H.  Trial Counsel

Petitioner argues that he was denied his right to counsel because his trial attorney did nothing to help him.  More specifically, Petitioner alleges that trial counsel refused to:  prepare a trial strategy; investigate the case and interview witnesses; challenge the trial court's lack of subject-matter jurisdiction; and object to the court's failure to give complete jury instructions.  Petitioner also asserts that trial counsel aided the state district court judge by stipulating to the forensic report and by failing to object to the lack of a competency hearing.  Petitioner concludes that trial counsel sabotaged the criminal proceedings, sided with the prosecutor, and abandoned him.  The state trial court disagreed with Petitioner's allegations and concluded on post-conviction review that trial counsel's performance was not

deficient and that Petitioner was not prejudiced by the allegedly deficient performance.

### 1. Legal Framework

The record belies Petitioner's allegation that he was constructively denied counsel, such that prejudice must be presumed. *Cf. United States v. Cronic*, 466 U.S. 648, 658-59 (1984) (stating that, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable" and that no specific showing of prejudice is required in those circumstances). Trial counsel actively represented Petitioner at the preliminary examination and throughout the remainder of the trial court proceedings. Trial counsel stipulated to the admission of some exhibits and objected to other exhibits; he participated fully and effectively during *voir dire*, and he gave an honest and direct opening statement in which he stressed the presumption of innocence and the lack of any evidence of premeditation and deliberation. Trial counsel also cross-examined prosecution witnesses, made appropriate objections (some, of which, were sustained), and asked for a special jury instruction on how the jurors should treat evidence of Petitioner's other violent acts. At the close of the

prosecution's proofs, trial counsel moved for a directed verdict of acquittal. Trial counsel cautioned Petitioner about testifying in his own behalf, and after Petitioner testified, counsel requested a jury instruction on voluntary manslaughter. Trial counsel subsequently made a closing argument in which he stressed the concept of reasonable doubt and stated that Petitioner acted out of a rage or sudden impulse, and not with premeditation and deliberation.

Although trial counsel conceded that Petitioner had killed Duberg, there was overwhelming evidence that Petitioner murdered Duberg. Defense counsel took a realistic approach to the case and tried to persuade the jury to find Petitioner guilty of second-degree murder, which does not carry a mandatory sentence of life imprisonment. In trying to mitigate the sentence, trial counsel's "concession of [Petitioner's] guilt does not rank as a 'fail[ure] to function in any meaningful sense as the Government's adversary.' " *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (quoting *Cronic*, 466 U.S. at 666). Thus, the "clearly established Federal law" here is *Strickland v. Washington*, 466 U.S. 668 (1984), not *Cronic*.

Under *Strickland*, Petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id*. at 687. The "deficient performance" prong of this test "requires showing that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (quoting *Strickland*, 466 U.S. at 693). In a habeas case, moreover,

> review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, supra, at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

## 2. Application

Petitioner alleges that trial counsel refused to prepare a trial strategy, investigate the case and interview witnesses, challenge the trial court's lack of subject-matter jurisdiction, and object to the trial court's failure to give complete jury instructions. When considering Petitioner's contention that defense counsel refused to prepare a trial strategy, it is important to remember that this was not a "who done it" case. As a result, defense counsel acted reasonably in maintaining that Petitioner was guilty of second-degree murder, not first-degree murder.

Contrary to Petitioner's allegations, it appears that trial counsel fully investigated the case and concluded from the overwhelming evidence against Petitioner that trying to mitigate the penalty was the best way to help Petitioner. Petitioner has not named any witnesses that trial counsel could have interviewed, and he has not suggested a trial strategy that counsel should have used. In fact, he chose to testify in his own behalf and adopted trial counsel's strategy by admitting that he killed Duberg, but denying that he acted with premeditation and deliberation. This strategy was consistent with Petitioner's own comment to his mother that he intended to try to get the charge reduced.

Trial counsel was not ineffective for failing to challenge the trial court's alleged lack of jurisdiction and alleged failure to instruct the jury on the elements of the crime, because those issues lack merit. And even though trial counsel stipulated to Petitioner's competence to stand trial, Petitioner has not demonstrated that he was incompetent. His own expert concluded that he was competent, and his trial testimony confirmed that he was capable of understanding the proceedings and of assisting his attorney.

In conclusion, trial counsel did not sabotage the criminal proceedings or abandon Petitioner, and the trial court's conclusion – that trial counsel was not ineffective – was neither contrary to, nor an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on the basis of his claim about trial counsel.

## I.  Appellate Counsel

In his ninth and final claim, Petitioner asserts that appellate counsel sabotaged his appeal of right by failing to raise all his issues in the appeal of right. Petitioner also asserts that appellate counsel abandoned him by telling him that he would have to research and draft any arguments that he wanted to submit in a *pro se* supplemental brief. Petitioner claims that this resulted in a structural error

which mandates his immediate release from custody because he is mentally ill, he could not have known that his appellate attorney was ineffective, and he had no choice but to trust his appellate attorney.

## 1. Clearly Established Federal Law

The proper standard for evaluating Petitioner's claim about appellate counsel is the one enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on his claim, Petitioner must show (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised the issues. *Id.* (citing *Strickland*, 466 U.S. at 687-91, 694). The Court is also mindful that

> [i]ndigent appellants have no constitutional right to compel their appointed attorneys to make every nonfrivolous argument on appeal. *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Tactical choices about which claims to raise on appeal "are properly left to the sound professional judgment of counsel. . . ." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751–52, 103 S.Ct. 3308). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (quoted in *Monzo v. Edwards*, 281 F.3d 568, 579

(6th Cir. 2002)). "[A]n appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995) (citing *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989)). A "dead-bang winner" is an issue which was obvious from the trial record, see e.g., *Matire v. Wainwright*, 811 F.2d 1430, 1438 (11th Cir. 1987) (counsel's failure to raise issue which " 'was obvious on the record, and must have leaped out upon even a casual reading of [the] transcript' was deficient performance), and one which would have resulted in a reversal on appeal." *Id.*

*Meade v. Lavigne*, 265 F. Supp. 2d 849, 869–70 (E.D. Mich. 2003).

## 2. Application

Contrary to Petitioner's allegations, appellate counsel did not sabotage Petitioner's appeal, nor abandon Petitioner. The attorney raised two issues, which Petitioner has included in his habeas petition. The failure to raise the remainder of Petitioner's habeas claims in the appeal of right did not amount to deficient performance, because those claims are not "dead-bang winners" or clearly stronger than the issues counsel did raise. The omitted issues lack merit for the reasons given above.

Furthermore, there is not a reasonable probability that Petitioner would have prevailed on appeal if his attorney had raised Petitioner's claims about the trial court's jurisdiction, the jury instructions, the lack of a competency hearing, the trial

court's conduct, the prosecutor, and trial counsel.  Therefore, the Court's "inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## IV.  Conclusion

Petitioner has failed to show that he is in custody in violation of his federal constitutional rights.  The Court, therefore, finds no merit in the claims which the state courts rejected on procedural grounds.  As for the issues that the state courts adjudicated on the merits, the state courts' decisions were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  The state courts' decisions certainly were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.  The Court therefore denies Petitioner's application for the writ of habeas corpus.

## V.  Certificates of Appealability
## and
## Leave to Proceed *In Forma Pauperis* on Appeal

Petitioner may not appeal this Court's opinion and order without a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a

certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not conclude that Petitioner's claims deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. The Court nevertheless will allow Petitioner to proceed *in forma pauperis* on appeal, because an appeal from this decision could be taken in good faith. 28 U.S.C. § 1915(a)(3).

S/Arthur J. Tarnow
Arthur J. Tarnow

Dated: June 14, 2017              Senior United States District Judge

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on June 14, 2017, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant